1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JIMIT H. MEHTA,                              CASE NO. 10-CV-944 JLS (AJB)

12                              Plaintiff,       **ORDER: (1) DENYING
                                                 DEFENDANTS WELLS FARGO
13                                               BANK, N.A. AND WELLS FARGO
                                                 HOME MORTGAGE'S REQUEST
14                                               FOR JUDICIAL NOTICE,
         vs.                                     (2) GRANTING DEFENDANT
15                                               FIRST AMERICAN TITLE
                                                 INSURANCE COMPANY'S
16                                               REQUEST FOR JUDICIAL
                                                 NOTICE, (3) GRANTING
17                                               DEFENDANTS WELLS FARGO
                                                 BANK, N.A. AND WELLS FARGO
18  WELLS FARGO BANK, N.A.; WELLS               HOME MORTGAGE'S MOTION
    FARGO HOME MORTGAGE; FIRST                   TO DISMISS, AND (4) GRANTING
19  AMERICAN TITLE INSURANCE                     DEFENDANT FIRST AMERICAN
    COMPANY; et al.,                             TITLE INSURANCE COMPANY'S
20                                               MOTION TO DISMISS
                               Defendants.
21                                               (Doc. Nos. 8 & 11)

22

23         Presently before the Court are Defendants Wells Fargo Bank, N.A. and Wells Fargo Home

24  Mortgage's (collectively "Wells Fargo") motion to dismiss (Doc. No. 8 (Wells Fargo MTD)) and

25  Defendant First American Title Insurance Company's motion to dismiss. (Doc. No. 9 (First American

26  MTD).)  Also before the Court are Plaintiff's oppositions (Doc. Nos. 16 (Opp. to Wells Fargo's MTD)

27  & 17 (Opp. to First Am.'s MTD)) and Defendants' replies.  (Doc. Nos. 18 (Reply ISO First Am.'s

28  MTD) & 20 (Reply ISO Well's Fargo's MTD).)  Having fully considered the legal and factual issues

1    surrounding these motions, the Court **GRANTS** both motions to dismiss.

2                                    **BACKGROUND**

3           Plaintiff Jimit Mehta is "a co-owner as tenants in common . . . of the real property located at

4    135 5th Street, Encinitas, CA 92024." (Doc. No. 1, Ex. A at 151–230 (FAC) ¶ 2.)  Plaintiff

5    "refinanced a prior loan secured by [his] Real Property on . . . February 26, 2007 by signing a

6    promissory note in favor of WFBNA." (*Id.* ¶ 7.)  This loan "was in the amount of two million"

7    dollars. (*Id.* ¶11.)  On "March 23, 2009, [Wells Fargo] and FIRST AMERICAN . . . claimed that

8    Plaintiff was in default on the Loan as reported on the Notice of Default and Election to Sell Under

9    Deed of Trust ('NOD').  (*Id.* ¶ 8.)  Defendant First American "recorded a Notice of Trustee Sale . .

10   . on June 26, 2009," with the sale scheduled for July 16, 2009. (*Id.* ¶ 12.)

11          On July 9, 2009, Plaintiff hired counsel "to negotiate a loan modification on his behalf." (*Id.*

12   ¶ 13.)  On July 13, 2009, Plaintiff submitted a loan modification package to Wells Fargo. (*Id.* ¶ 14.)

13   Plaintiff's counsel[1] "spoke with an agent of [Wells Fargo] by the name of Debra DeCristoforo . . . who

14   stated that [Wells Fargo] owned the Loan and that a complete loan package had been received." (*Id.*

15   ¶ 15.)  Ms. DeCristoforo allegedly told Plaintiff's counsel that Plaintiff's "file was being escalated for

16   the postponement of the Trustee's Sale." (*Id.* ¶ 16.)  On July 29, 2009, Plaintiff's counsel "spoke with

17   an agent of [Wells Fargo] by the name of Josh" who told counsel "that the financial worksheet and

18   profit and loss statements needed to be signed and dated." (*Id.* ¶ 17.)  Plaintiff claims that he

19   complied. (*Id.*)  On August 8, 2009, counsel again "spoke with an agent of [Wells Fargo] by the name

20   of Sarah" who told counsel "that no negotiator had yet been assigned and to call back." (*Id.* ¶ 18.)

21   Counsel again called Wells Fargo on August 14, 2009. (*Id.* ¶ 19.)  According to Plaintiff, counsel

22   spoke with "Andrea" who said "that she was emailing the Foreclosure Department to escalate the file

23   and postpone the trustee's sale date." (*Id.*)  According to Plaintiff, the "sale date was postponed and

24   the new sale date was [] set for October 6, 2009." (*Id.*)

25          Counsel placed another call to Wells Fargo on August 21, 2009 and discovered that Wells

26   Fargo believed "that Plaintiff had called in and requested cancellation of the workout, which was not

27

28          [1] The term "counsel" in this Order encompasses both Plaintiff's attorney and those working
     for Plaintiff's attorney.

true." (*Id.* ¶ 20.) When they cleared up that issue, Defendant "placed Plaintiff in a trial modification." (*Id.* ¶ 21.) "Plaintiff complied with the payment terms of the trial modification and made every payment on time." (*Id.* ¶ 23.) As such, "the trustee's sale date was again postponed . . . to January 5, 2010." (*Id.*)

Subsequently, Defendant Wells Fargo sought further information including "a copy of the divorce decree, hardship letter, and updated bank statements for Plaintiff's business and personal tax returns." (*Id.* ¶ 24.) Plaintiff sent almost everything, but only a part of his divorce decree. (*Id.* ¶¶ 24–25.) When counsel spoke with Wells Fargo on November 30, 2009, she was told "that the modification had been cancelled because all pages of the divorce decree had not been received and that the file would have to be resubmitted to complete a loan modification." (*Id.* ¶ 26.) Plaintiff submitted that information on December 10, 2009 and was told to call back "to set up another trial modification." (*Id.* ¶ 27.)

When Plaintiff's counsel called back, she was told "that Plaintiff had to wait for the file to be submitted to loss mitigation before financials could be reviewed." (*Id.* ¶ 28.) When counsel again called, Wells Fargo's employee told her "that the file was still not in the loss mitigation department" but "confirmed receipt of the fax and all required items." (*Id.* ¶ 29.) That employee also "stated that she was escalating the file to loss mitigation." (*Id.*) Later another Wells Fargo employee stated "that the file had been escalated and that [Wells Fargo] was postponing the trustee's sale date." (*Id.* ¶ 30.)

However, on January 5, 2010, Plaintiff found out that the sale would be held as scheduled. (*Id.* ¶ 31.) Moreover, Plaintiff's counsel was told "that the file had never been escalated." (*Id.* ¶ 32.) However, the employee told counsel that he would attempt to have the sale postponed. (*Id.*) Shortly thereafter, counsel was told "that the file had been escalated and the loss mitigation department had not responded." (*Id.*) After further phone calls to Wells Fargo produced no result, counsel called First American and talked with an employee who told her "that he was going to put the trustee's sale on hold until he could confirm with [Wells Fargo] whether or not [it] would postpone the trustee's sale." (*Id.* ¶¶ 33–37.) However, a further call to Wells Fargo determined "that [Wells Fargo] was taking Plaintiff's Residence to sale." (*Id.* ¶ 38.) The sale occurred later that day. (*Id.* ¶ 42.)

//

1

**LEGAL STANDARD**

2       Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that

3   the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a

4   motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and

5   sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain

6   statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not

7   require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-

8   unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, – US — , 129 S. Ct. 1937, 1949 (2009)

9   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's

10  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

11  conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*,

12  550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice

13  if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949

14  (citing *Twombly*, 550 U.S. at 557).

15      "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

16  as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at

17  570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the

18  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*,

19  129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be

20  probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

21  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.

22  *Id.*  (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal

23  conclusions" contained in the complaint.  *Id.*  This review requires context-specific analysis involving

24  the Court's "judicial experience and common sense."  *Id.* at 1950 (citation omitted).  "[W]here the

25  well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

26  complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*

27  //

28  //

**ANALYSIS**

## I.   DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE

Both Wells Fargo and First American have requested that this Court take judicial notice of certain documents.  (*See* Doc. Nos. 8-2 (Wells Fargo's RJN) & 11-1 (First Am.'s RJN).)  Generally on a motion to dismiss, a court may only consider three things: (1) "allegations contained in the pleadings," (2) "exhibits attached to the complaint," and (3) "matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citation omitted).  However, a Court may also "consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Swartz*, 476 F.3d at 763 (citation omitted).

Wells Fargo asks the Court to take notice of the Notice of Right to Cancel.  (Wells Fargo's RJN at 1.)  They do not, however, explain into which of the above-listed categories this document falls.  And the Court cannot find a permissible avenue for its consideration.  It is not a matter properly subject to judicial notice under Federal Rule of Evidence 201.  And although the First Amended Complaint (FAC) alleges that Plaintiff did not receive "two copies . . . the Notice of Right to Cancel," this document is not encompassed by the rule allowing consideration of "a writing referenced in a complaint but not explicitly incorporated therein" because the complaint does not "rel[y] on the document."  *Swartz*, 476 F.3d at 763.  This evidence is more properly received on a motion for summary judgment.  Therefore, Wells Fargo's request for judicial notice is **DENIED**.

First American seeks judicial notice of five documents: (1) the Deed of Trust, (2) Substitution of Trustee relating to the Deed of Trust, (3) Notice of Default and Election to Sell, (4) Notice of Trustee's Sale, and (5) Trustee's Deed Upon Sale.  (First Am.'s RJN at 2.)  Plaintiff has not opposed this request.  The Court finds that each of these documents is properly judicially noticed.  All are publicly recorded and their authenticity is not in dispute.  Further, they are each repeatedly referenced in the FAC.  As such, First American's request for judicial notice is **GRANTED**.

//

//

//

1    **II.    DEFENDANTS' MOTIONS TO DISMISS**

2         The FAC alleges fourteen causes of action, all of which are pled against Wells Fargo and all

3    but three of which are pled against First American.  Both parties challenge all of these claims in their

4    motions to dismiss.

5              A.    Truth In Lending Act Claim

6         Plaintiff's first cause of action is for violations of the Truth in Lending Act (TILA) against

7    Defendant Wells Fargo only.  He claims that he "did not receive all required 'material disclosures,'

8    including but not limited to two copies of each of the Notice of Right to Cancel containing the correct

9    date of expiration of the cancellation period for the transaction."  (FAC ¶ 53.)  Further, Plaintiff

10   alleges that he rescinded his loan on January 19, 2010 but Defendants have failed to take appropriate

11   action.  (*Id.* ¶¶ 49 & 55–57.)  From this, Plaintiff seeks both damages and rescission of the loan

12   transaction.

13        Wells Fargo argues that this claim must be dismissed because it is barred by the statute of

14   limitations.[2]  (Wells Fargo's MTD at 5.)  It asserts that a damages claim must be brought within one

15   year of the occurrence of the TILA violation which is "the date the loan transaction is consummated."

16   (*Id.*)  Since the loan was consummated on February 16, 2007, Plaintiff's complaint, filed on January

17   13, 2010, was not within that window.

18        Further, Wells Fargo also argues the rescission claim is time barred.  (*Id.*)  This is because the

19   right to rescind under TILA expired when the trustees sale took place.  (*Id.* at 6.)  Since the foreclosure

20   sale was January 5, 2010 and Plaintiff did not attempt to rescind until January 19, 2010, he could no

21   longer exercise his right to rescind.  (*Id.*)  Wells Fargo also argues that "Plaintiff's failure to allege

22   tender dooms [his] TILA rescission claim."  (*Id.*)

23        The Court agrees with Wells Fargo.  Under 15 U.S.C. § 1635(f), "An obligor's right of

24   rescission shall expire three years after the date of consummation of the transaction <u>or upon the sale</u>

25   <u>of the property, whichever occurs first</u>, notwithstanding the fact that the information and forms

26   required under this section or any other disclosures required under this part have not been delivered

27

28        [2] Since the Court denied Wells Fargo's request for judicial notice with respect to the Notice of Right to Cancel, the arguments based on that document are not addressed here.  (*See* Wells Fargo's MTD at 4–5.)

1  to the obligor."  15 U.S.C. § 1635(f) (emphasis added); *see also* 12 C.F.R. § 226.23(a)(3) (stating

2  same). The Ninth Circuit has unequivocally stated that the sale of property is an absolute bar to

3  rescission.  *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (citing 12 C.F.R.

4  § 226.23(a)(3)); *see also Hefferman v. Bitton*, 882 F.2d 379, 383–84 (9th Cir. 1989); *Rosal v. First*

5  *Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1124 (N.D. Cal. 2009).  This tracks the statute's and

6  regulation's language which offer no flexibility in this requirement. *See Meyer*, 342 F.3d at 903 ("The

7  regulation is clear: the right to rescind ends with the sale.").

8        Plaintiff's counter-arguments do not rebut this point.  Plaintiff claims that "the Trustee's sale

9  was void or voidable" and "[n]o valid sale ever took place."  (Opp. to Wells Fargo's MTD at 4.)

10 However, Plaintiff's FAC provides no basis on which the sale could be avoided and Plaintiff offers

11 no other basis for avoiding the force of TILA's explicit limitations period.

12       Since Plaintiff's property has been sold in this case Wells Fargo's motion to dismiss must be

13 **GRANTED** as to his TILA rescission claims.  The statue and the regulation are clear, even if Plaintiff

14 did not properly receive notice of his right to cancel, his right to rescission expired on January 5, 2010

15 when the property was sold.  And since Plaintiff cannot possibly correct this deficiency, the TILA

16 rescission request must be **DISMISSED WITH PREJUDICE**.

17       Next, the Court also finds that the damages claims must be **DISMISSED WITH**

18 **PREJUDICE**.  As Plaintiffs point out, TILA damages claims for disclosure violations must be

19 brought within one year of the date a loan transaction is consummated. *King v. California*, 784 F.2d

20 910, 915 (9th Cir. 1986); 15 U.S.C. § 1640(e).  Thus, to the extent that Plaintiff's damages claim is

21 based upon Wells Fargo's alleged failure to provide all required disclosures, the limitations period

22 expired on February 16, 2008.  Further, Plaintiff cannot obtain damages for Wells Fargo's "fail[ure]

23 to comply with the rescission provisions of 12 CFR 226.23" because, as discussed above, Plaintiff's

24 right to rescind and Defendant's duty to comply with the rescission procedures expired on January 5,

25 2010.  Thus, Plaintiff's TILA claim is **DISMISSED WITH PREJUDICE**.

26       B.      California Civil Code Section 2923.5 Claim

27       Next, Wells Fargo and First American assert that Plaintiff's claim under California Civil Code

28 section 2923.5 fails.  This Court agrees.

1    "Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender
2    contact the borrower in person or by phone to 'assess' the borrower's financial situation and 'explore'
3    options to prevent foreclosure." *Mabry v. Superior Court*, — Cal. Rptr. 3d —, 2010 WL 2180530,
4    *1 (Cal. Ct. App. 2010). The requirements of this section are "very narrow." *Id.* at * 12. They do not
5    require the lender to modify the loan or do very much more than have minimal conversations with the
6    debtor to assess their position and inform them of various options to avoid foreclosure. *Id.* Moreover,
7    "[i]f section 2923.5 is not complied with, then there is no valid notice of default, and without a valid
8    notice of default, a foreclosure sale cannot proceed." *Id.* at *7. Nonetheless, once the foreclosure sale
9    happens, the postponement remedy disappears. *Id.* at *14 ("the *only* remedy provided is a
10   postponement of sale before it happens" (emphasis in original)). Failure to comply is does not cause
11   any cloud on the property's title. *Id.* Finally, although no express private right of action is written
12   into the text of section 2923.5, one California Court of Appeal has recently held that a private right
13   of action exists to enforce the provision. *Id.* at *8.

14       In this case, Plaintiff argues that the Defendants did not comply with section 2923.5 for several
15   reasons. First, Plaintiff claims that Wells Fargo did not contact the Plaintiff before the notice of
16   default. (FAC ¶ 66; *see also id.* ¶¶ 70–72.) Second, Plaintiff claims that the Defendants violated this
17   section because "[t]he required declaration is not signed under penalty of perjury and there is no
18   evidence on the face of the declaration that the declarant had any personal knowledge of the averments
19   contained therein." (*Id.* ¶ 67; *see also id.* ¶¶ 73–78.) Because of these alleged deficiencies, Plaintiff
20   believes that "the non-judicial foreclosure, pursuant to the [Notice of Default] and [Notice of Sale],
21   is void." (*Id.* ¶ 69; *see also id.* ¶¶ 72 & 78.)

22       Plaintiff's argument under section 2923.5, however, does not afford him any remedy at this
23   late date. First, the 2923.5 notice need not be signed under penalty of perjury. *Mabry*, 2010 WL
24   2180530, at *13 ("The idea that this 'declaration' must be made under oath must be rejected."). As
25   the *Mabry* court aptly noted, nothing in either the colloquial or legal definitions of a "declaration"
26   require it to be made under oath. *Id.* Further, the absence of the words "penalty of perjury" in this
27   section and the presence of that phrase in other mortgage-related statutes indicates that the legislature
28   had not intention of imposing such a requirement. *Id.* Finally, the statute on which Plaintiff relies

only applies where the statute <u>requires</u> the evidence of a <u>sworn declaration</u>, not simply a declaration. *See* Cal. Code. Civ. P. § 2015.5.  And, as noted above, section 2923.5 does not require a sworn declaration.  Thus, the absence of a signature under penalty of perjury does not make the notice deficient.

Plaintiff's second argument is also foreclosed by *Mabry*.  That court clearly indicated that (1) the notice can "track the language of the statute" and (2) the person signing the notice need not have been the same person who performed the options listed in section 2923.5.  *Mabry*, 2010 WL 2180530, at *14.  Again, therefore, Plaintiff's allegations do not identify a problem with the 2923.5 notice.

Finally, even if Defendants did not contact Plaintiff as required prior to foreclosure, Plaintiff's ability to raise this challenge expired on the date of the sale of his property.  *Id.* at *14.  This is because "the *only* remedy provided [by section 2923.5] is a postponement of sale before it happens." *Id.*  In other words, Plaintiff's claim that the sale is void because of these violations is legally incorrect and the alleged error places no cloud over the current property owner's title.  *Id.*  Therefore, given the posture of this case, Plaintiff has no actionable claim under section 2923.5, meaning that his causes of action under that section must be **DISMISSED WITH PREJUDICE**.

C.   First American's Asserted Common Interest Privilege

Defendant First American argues that its actions in this matter are privileged under California Civil Code section 2924(d).  (First Am.'s MTD at 7–8.)  That section provides that "(1) The mailing, publication, and delivery of notices as required by this section[,] (2) Performance of the procedures set forth in this article[, and] (3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure" are privileged pursuant to California Civil Code section 47.  Cal. Civ. Code § 2924(d).  First American argues that since its "purported liability . . . arises from its acts as trustee under the Deed of Trust" and since "Plaintiff has not alleged that [it] acted with malice," Plaintiff's claims cannot survive.  (First Am.'s MTD at 7–8.)

The Court agrees.  As Plaintiff and the FAC make clear, this action, at least as against First American, is centered around First American's actions involving the Notice of Default and execution of the foreclosure sale.  (*See* Opp. to First Am.'s MTD at 8–10.)  Additionally, the pleadings contain

1    no factual allegations which indicate malice on the part of First American.  The FAC's legal

2    conclusion that they acted with malice is not entitled to any presumption of truth. *Iqbal*, 129 S. Ct.

3    at 1949.

4         Plaintiff cites First American's alleged disregard for California Civil Code section 2923.5 and

5    failure to give the statutorily required notice as evidence of malice and intent.  First, as discussed

6    *supra*, Plaintiff has not pled a violation of section 2923.5 because the declaration attached to the FAC

7    is compliant with the requirements of that statutory section.  *See Mabry*, 2010 WL 2180530, at

8    *13–*14.

9         Second, the allegations regarding a failure to provide the required notice are unavailing.  For

10   example, Plaintiff argues that his ex-wife, Bonnie Mae Hudson, "received no notification from [First

11   American] regarding the impending foreclosure." (Opp. to First Am.'s MTD at 9.)  However, Plaintiff

12   has no standing to raise this issue in this matter.

13        Article III, section 2 of the United States Constitution requires that a plaintiff have standing

14   to bring a claim.  In order "to satisfy Article III's standing requirements, a plaintiff must show (1) it

15   has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not

16   conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant;

17   and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

18   decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81

19   (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

20        In the case of Plaintiff's ex-wife, he has not established that he actually suffered an injury in

21   fact as a result of the alleged failure to provide her with notice.  *See Lujan*, 504 U.S. at 560 n.1 ("By

22   particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

23   This claimed failure of notice did not deprive him of an opportunity to challenge the foreclosure

24   proceedings or the notice of default.  Moreover, Plaintiff offers no basis upon which he can assert his

25   ex-wife's rights in this matter.[3]

26   _____

27        [3]  Further, as First American points out, Plaintiff states that Ms. Hudson "was a tenant in
     common with Plaintiff."  (Opp. to First Am.'s MTD at 9.)  If she had no interest in the property at the
28   time she allegedly did not receive notice, there would be no violation.  However, since this issue is
     unclear from the pleadings and standing issues precluding this argument, the Court does not address
     it at this time.

1    Plaintiff's other basis for his allegation of malice, the apparent failure of First American "to

2  provide any notice to [Plaintiff's prior attorneys] regarding the impending foreclosure sale" despite

3  the existence of a *lis pendens*, is also flawed.  (*See* Opp. to First Am.'s MTD at 9.)  As Plaintiff points

4  out, California Civil Code section 2924b requires a trustee "to provide notice of an impending

5  foreclosure sale to a mortgagor and to others who have 'duly recorded a request' to be notified."[4]  (*Id.*)

6  However, the relevant notice must "specify[] the name and address of the person to whom the notice

7  is to be mailed, [] identify the deed of trust or mortgage by stating the names of the parties thereto, the

8  date of recordation thereof, and the book and page where the deed of trust or mortgage is recorded or

9  the recorder's number."  Cal. Civ. Code § 2924b(a).  The *lis pendens* here, however contains none of

10  these required elements: it does not specify where the notice should be sent or identify the deed of

11  trust or mortgage in a sufficient manner.  (FAC, Ex. F.)  As such, the Court has no basis upon which

12  to conclude that First American was required by law to notify Plaintiff's counsel.

13    This reasoning applies equally to Plaintiff's argument that First American's liability arises

14  from it's failure to communicate.  As noted above, Plaintiff has not shown that he has standing to

15  assert any failure to notify his ex-wife and has not shown that his counsel did not receive notice

16  required by law.    For these reasons, the Court finds that First American is statutorily immune for

17  its communications given Plaintiff's allegations in the FAC and that the alleged failures to

18  communicate do not provide a basis for liability.

19    D.    Breach of Contract and Promissory Estoppel Claims

20    Plaintiff's fourth cause of action alleges breach of contract against Wells Fargo, while the

21  twelfth cause of action asserts promissory estoppel against both Wells Fargo and First American.[5]

22  Both claims involve the same factual allegations.  Plaintiff alleges that Wells Fargo "orally agreed that

---

24  [4]  Although Plaintiff cites California Civil Code § 2924(b), the language he cites actually comes from section 2924b(a).

25  [5]  Although Plaintiff frames this cause of action as one for equitable estoppel, it is clear that

26  he actually intends to bring a claim for promissory estoppel.  (Opp. to Wells Fargo's MTD at 15.)  The Court comes to this conclusion for two reasons.  First, the case Plaintiff cites, *Raedeke*, is specifically

27  discussing promissory estoppel.  (*Id.* (quoting *Raedeke*, 10 Cal. 3d at 672).)  Second, "[p]romissory estoppel is based on a promise; equitable estoppel is based on misrepresentation of an existing fact."

28  *Cotta v. City of S.F.*, 69 Cal. Rptr. 3d 612, 625 n.8 (Cal. Ct. App. 2007) (citing *Panno v. Russo*, 186 P.2d 452, 454–55 (Cal. 1947)).  At issue in this case is an alleged promise rather than a fact, placing this squarely within the ambit of promissory estoppel.

the trustee's sale scheduled for January 5, 2010 would not go forward" and "[i]n consideration of [Wells Fargo's] agreement . . . Plaintiff provided documents and information to [Wells Fargo] and complied with the requests of [Wells Fargo] relating to the loan modification process." (FAC ¶ 89.) Further, Wells Fargo allegedly breached this agreement by selling the home on January 5, 2010. (*Id.* ¶ 90.)

To prevail on his breach of contract claim Plaintiff must show (1) a contract, (2) his performance or that such performance was excused, (3) that Wells Fargo breached that contract, and (4) that he was damaged by the breach. *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1399 (1990)).

Wells Fargo argues that the breach of contract action is barred by the statute of frauds. (Wells Fargo's MTD at 14.)  It claims that this oral agreement expressly contradicts the terms of the forbearance agreement which "states that the Bank could pursue its rights under the Deed of Trust, including foreclosure, upon Plaintiff failing to provide the required information in the timeframe (sic) provided." (*Id.* at 15.)  "Accordingly, when Plaintiff failed to provide that information, the Loan was removed from the modification review process and the trustee's sale proceeded as planned."  (*Id.*)

Moreover, Wells Fargo argues that Plaintiff's allegation that he provided documents "is not sufficient consideration to support a claim for breach of contract.  Negotiation documents, communications, and unsolicited offers, are just that, negotiations and offers."  (*Id.*)  Further, Defendant believes that Plaintiff's payments are consideration "because Plaintiff already owed that money."  (*Id.*)  Thus, according to Wells Fargo, Plaintiff has not stated a breach of contract claim.

Plaintiff disagrees.  He argues that "[t]he California Supreme Court has held, that, "if there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement 'executed' within the meaning of section 1698.'" (Opp. to Wells Fargo's MTD at 15 (quoting *Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d 665, 673 (1974)).)  "In the present case, adequate consideration can be found in the form of plaintiff's completion and submission of the loan modification application."  (*Id.*)  "[I]f not for Defendants representation regarding the application, plaintiff would have spent the time pursuing

1   other options to avoid the foreclosure." (*Id.*)

2        California law provides that "[u]nless the contract otherwise expressly provides, a contract in

3   writing may be modified by an oral agreement supported by new consideration." Cal. Civ. Code §

4   1698(c). However, "[t]he statute of frauds (Section 1624) is required to be satisfied if the contract as

5   modified is within its provisions." *Id.* The statute of frauds states that an "agreement . . . for the sale

6   of real property, or of an interest therein," is "invalid[] unless [it], or some note or memorandum

7   thereof, [is] in writing and subscribed by the party to be charged or by the party's agent." Cal. Civ.

8   Code § 1624(a)(3). Further, if this agreement is "made by an agent of the party sought to be charged,

9   [the agreement] is invalid, unless the authority of the agent is in writing, subscribed by the party

10  sought to be charged." *Id.* Nonetheless, the statute of frauds does not preclude "the application of

11  rules of law concerning estoppel." Cal. Civ. Code § 1698(d).

12        The Court agrees with Wells Fargo, this action is barred by the statute of frauds. "In the

13  absence of consideration, a gratuitous oral promise to postpone a sale of property pursuant to the terms

14  of a trust deed ordinarily would be unenforceable under section 1698." *Raedeke v. Gibraltar Sav. &*

15  *Loan Ass'n*, 10 Cal. 3d 665, 673 (1974) (citing *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d

16  112, 121 (1971)). However, "if there exists sufficient consideration for an oral modification

17  agreement, then full performance by the promisee alone would suffice." *Id.*

18        In this case, Plaintiff's alleged consideration is insufficient and unrelated to the allegedly

19  broken promise. According to the FAC, Wells Fargo "orally agreed that the trustee's sale scheduled

20  for January 5, 2010 would not go forward." (FAC ¶ 89.) More specifically it alleges that Wells

21  Fargo's employee told Plaintiff's counsel "that the file had been escalated and that [Wells Fargo] was

22  postponing the trustee's sale date." (*Id.* ¶ 30.) This statement placed no conditions or expectations

23  on Plaintiff. (*Id.*) It was simply a response to the phone call from Plaintiff's counsel. (*Id.*)

24        This is not consideration under California law. "[T]here are two requirements [under

25  California Law] in order to find consideration." *Steiner v. Thextron*, 226 P.3d 359, 366 (Cal. 2010)

26  (referring to Cal. Civ. Code § 1605). First, "[t]he promisee must confer (or agree to confer) a benefit

27  or must suffer (or agree to suffer) prejudice. . . . [E]ither alone is sufficient to constitute

28  consideration." *Id.* Nonetheless, "[i]t is not enough . . . to confer a benefit or suffer prejudice for there

to be consideration. . . . [T]he second requirement is that the benefit or prejudice must actually be bargained for as the exchange for the promise. Put another way, the benefit or prejudice must have induced the promisor's promise." *Id.*; *see also Simmons v. Cal. Inst. of Tech*, 209 P.2d 581, 586 (Cal. 1949) ("[T]he consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise.").

Plaintiff's pleadings indicate that neither of these requirements are met here. First, presuming that "plaintiff's completion and submission of the loan modification application" was actually bargained for as an exchange, Plaintiff conferred no benefit on Wells Fargo nor suffered any prejudice. Although "courts do not weigh the quantum of the consideration as long as it has some value," this consideration has absolutely no value. *A.J. Indus., Inc. v. Ver Halen*, 142 Cal. Rptr. 383, 389 (Cal. Ct. App. 1977) (*citing Blocksidge v. Broadway Sixth Co.*, 24 Cal. Rptr. 622, 624 (Cal. Ct. App. 1962)). Plaintiff offers no hint of how his submission of forms and other documentation provided a benefit to Defendant Wells Fargo. Nor is it clear how that submission constitutes any detriment to the Plaintiff. "It is well settled that something which is completely worthless cannot constitute valid consideration." *Grant v. Aerodraulics Co.*, 204 P.2d 683, 688 (Cal. Ct. App. 1949) (citing, *inter alia*, *Gifford v. Carvill*, 29 Cal. 589 (1866)).

Moreover, even if this consideration had value, it fails to meet the second aspect of consideration, it was not "actually . . . bargained for as the exchange for the promise." *Steiner*, 226 P.3d at 366. Plaintiff's complaint leaves no room for a bargain. (*See* FAC ¶ 30.) Wells Fargo's employee told his counsel that the sale had been postponed. This was not in response to any meaningful action by Plaintiff. (*Id.*) Nor is there any indication that it was conditional on any future action by Plaintiff. (*Id.*) He was attempting to enter into a loan modification, but offers no hint that Wells Fargo ever agreed to postpone the foreclosure sale in exchange for the submission of loan modification paperwork. Given this inherent disconnect between the alleged statement by Wells Fargo's employee on December 30, 2009 and any action taken by or requested of Plaintiff, the Court finds that the alleged consideration did not induce Wells Fargo's alleged promise. *Steiner*, 226 P.3d at 366.

This is the paradigmatic "gratuitous oral promise to postpone a sale of property pursuant to

1    the terms of a deed of trust" in the absence of consideration and is therefore unenforceable.  *Raedeke*,

2    10 Cal. 3d at 673; *see also Secrest v. Sec. Nat'l Mortgage Loan Trust 2002-2*, 84 Cal. Rptr. 3d 275

3    (Cal. Ct. App. 2008) (holding that a forbearance agreement regarding foreclosure fell within the

4    statute of frauds and was therefore unenforceable).  As such, Plaintiff's breach of contract claim for

5    failure to postpone the foreclosure sale must be **DISMISSED WITH PREJUDICE**.

6         However, Plaintiff still argues that he is entitled to recover under the doctrine of promissory

7    estoppel.  Promissory estoppel will bind a promisor "'when he should reasonably expect a substantial

8    change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided

9    only by its enforcement.'" *Raedeke*, 10 Cal. 3d at 672 n.1 (quoting *Youngman v. Nev. Irrigation Dist.*,

10   70 Cal. 2d 240, 249 (1969)).  "Cases have characterized promissory estoppel claims as being basically

11   the same as contract actions, but only missing the consideration element."  *US Ecology, Inc. v.*

12   *California*, 28 Cal. Rptr. 3d 894, 906 (Cal. Ct. App. 2005).  Court have broken this doctrine down into

13   four elements: "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to

14   whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party

15   asserting the estoppel must be injured by his or her reliance."  *Boon Rawd Trading Int'l Co., Ltd. v.*

16   *Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010) (citing *US Ecology*, 28 Cal.

17   Rptr. 3d at 904–07); *see also Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 316 (9th Cir. 1996) ("In

18   order to constitute part performance the acts (1) must be "unequivocally referable" to the terms of the

19   oral contract; (2) must irretrievably change plaintiffs' position, and (3) must be performed in

20   reasonable reliance on the contract.  (citing *Am. Cas. Co. v. Curran Prods, Inc.*, 28 Cal. Rptr. 131, 135

21   (1963) and *Monarco v. Lo Greco*, 220 P.2d 737 (Cal. 1950))).

22        According to Plaintiff, those elements are satisfied here.  (Opp. to Wells Fargo's MTD at 16.)

23   He claims that "(1) Wells Fargo made a promise that it would postpone the sale if plaintiff completed

24   and submitted the loan modification application; (2) Wells Fargo should have reasonably expected

25   that plaintiff would rely on that promise; (3) plaintiff in fact did relied (sic) on that promise by

26   spending time to complete the application rather than pursuing other options to avoid the foreclosure;

27   and (4) if the promise is not enforced, injustice will occur."  (*Id.*)

28        The Court disagrees because Plaintiff's complaint fails to demonstrate that he "substantial[ly]

change[d] [his] position, either by act or forbearance, in reliance on [Wells Fargo's] promise."[6] *Raedeke*, 10 Cal. 3d at 672 n.1 (quoting *Youngman*, 70 Cal. 2d at 249). The completion of the loan modification application is not reliance for several reasons. First, that application was allegedly complete long before Wells Fargo ever allegedly promised to stop the foreclosure sale. (*See* FAC ¶¶ 27 & 30.) Plaintiff could not possibly have relied on a promise not yet made. Second, the FAC makes clear that the instructions to Plaintiff's counsel regarding a later phone call and additional documentation were not connected to the statement that Wells Fargo "was postponing the trustee's sale date." (*Id.* ¶ 30.) Thus, citing them as reliance is illogical and cannot constitute a substantial change of position in reliance upon Wells Fargo's employee's statement regarding the sale date. Finally, Plaintiff's brief makes general and unsubstantiated reference to "other options to avoid the foreclosure." (Opp. to Wells Fargo's MTD at 16.) However, it is unclear what realistic options existed to Plaintiff less than a week before the foreclosure sale. None are listed in the FAC. Given that this is absent from the pleading, the Court cannot find any meaningful forbearance in reliance on the alleged promise.

As to Defendant First American, Plaintiff cannot state a claim. As alleged in the FAC, this claim fails against First American at the first element: First American never made Plaintiff a promise. With this element there can be no promissory estoppel. Of course as Plaintiff freely admits, this cause of action is "aimed primarily at Defendant Wells Fargo." (Opp. to First Am.'s MTD at 10.) His only justifications for this claim are (1) that First American is "an indispensable party" and "must be included [in this suit] to set aside the wrongful foreclosure sale," and (2) that "a trustee's or beneficiary's fraudulent conduct during foreclosure proceedings can give rise to a tort action." (*Id.* at 10–11.) The first is not a reason to allow Plaintiff to maintain an cause of action that does not lie against First American and the second, even if true, does not excuse the requirement that all elements of this cause of action be met.

As such Plaintiff has not established a claim for promissory estoppel and the twelfth cause of action must be **DISMISSED**. With respect to First American, this claim is **DISMISSED WITH**

---

[6] Although the Court addresses only the issue of substantial change of position, the failure to address the other elements of promissory estoppel should not be read as expressing an opinion on their presence or absence.

1   PREJUDICE and as to Wells Fargo **DISMISSED WITHOUT PREJUDICE**.  Further, since it is

2   possible that further amendment could correct the pleading deficiencies as against Wells Fargo.

3   Therefore, the Court allows Plaintiff **LEAVE TO AMEND** this claim with respect to the reliance

4   issue on the promissory estoppel claim as against Wells Fargo only.

5       E.       Fraud, Intentional Misrepresentation and Negligent Misrepresentation Claims

6           Plaintiff's third, sixth, and eighth causes of action set forth claims for fraud, intentional

7   misrepresentation, and negligent misrepresentation.  The sixth and eighth target both Defendants while

8   the third is against Wells Fargo only.  All three of these claims are fraud claims making the same

9   factual allegations and governed by essentially the same standard.  *See Alliance MortgageCo. v.*

10  *Rothwell*, 900 P.2d 601, 608 n.4 (Cal. 1995).  Specifically, they are based on Plaintiff's claim that

11  Wells Fargo falsely told Plaintiff that the January 5, 2010 foreclosure sale had been, or was going to

12  be, postponed.  (*See* FAC ¶ 80–82.)

13          "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation

14  (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c)

15  intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Small v.*

16  *Frits Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003) (quoting *Lazar v. Superior Court*, 909 P.2d 981, 984

17  (Cal. 1996)).  Intentional misrepresentation has the same elements, *Alliance Mortgage*, 900 P.2d at

18  608, while negligent misrepresentation replaces the scienter requirement with a requirement that the

19  defendant have "no reasonable ground" for believing the representation to be true.  *Small*, 65 P.3d at

20  1258.

21          Since these are fraud claims Federal Rule of Civil Procedure 9(b) sets the bar for Plaintiff's

22  pleadings.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–03 (9th Cir. 2003).  Rule 9(b)

23  states that "In alleging fraud or mistake, a party must state with particularity the circumstances

24  constituting fraud or mistake."  These allegations must "be 'specific enough to give defendants notice

25  of the particular misconduct . . . so that they can defend against the charge and not just deny that they

26  have done anything wrong.'  Averments of fraud must be accompanied by 'the who, what, when,

27  where, and how' of the misconduct charged.  '[A] plaintiff must set forth more than the neutral facts

28  necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a

1  statement, and why it is false.'" *Vess*, 317 F.3d at 1106 (citations omitted).

2      As with the promissory estoppel claim, Plaintiff does not state a claim against First American

3  because there are no allegations that it made any misrepresentation to Plaintiff.  This means that

4  Plaintiff cannot recover on any of these claims.  And the other justifications discussed in section II(C),

5  *supra*, again do not allow these claims to remain against First American.

6      The Court finds that the same is true with respect to Defendant Wells Fargo.  Wells Fargo

7  argues that these claims "are based on the same factual allegations underlying [Plaintiff's] breach of

8  contract claim and are therefore an improper attempt to obtain punitive damages for a contract

9  dispute." (Memo. ISO Motion at 11 (citation omitted).)  Certainly Wells Fargo is correct that this is

10 related to Plaintiff's breach of contract cause of action and that in a breach of contract action punitive

11 damages are impermissible.  *See Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 61 (1999).

12 However, "conduct amounting to a breach of contract becomes tortious . . . when it also violates a duty

13 independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 981 P.2d 978, 983

14 (Cal. 1999).  One of those independent tort duties is "where the contract was fraudulently induced."

15 *Id.* at 552 (citing *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 1 Cal. Rptr. 2d 301, 310–11 (Cal.

16 Ct. App. 1991)); *see also Glendale Fed. Sav & Loan Ass'n v. Marina View Heights Dev. Co.*, 135 Cal.

17 Rptr. 802, 821–22 (Cal. Ct. App. 1977).  Thus, Plaintiff's fraud claim is not *per se* impermissible

18 simply because it relates to his breach of contract allegations and this argument may be rejected.

19      Wells Fargo also claims that this cause of action is insufficiently pled.  First, according to

20 Defendant, Plaintiff's reliance on any oral statement that the foreclosure sale would be postponed was

21 not reasonable as a matter of law.  (Memo. ISO Motion at 11.)  Second, Wells Fargo believes that

22 these claims are not pled with the particularity required by Federal Rule of Civil Procedure 9(b).  (*Id.*

23 at 11.)  Specifically, it argues that Plaintiff "does not allege facts to support his allegation that anyone

24 at Wells Fargo intended to defraud him." (*Id.* at 12.)  Moreover, the FAC lacks "facts sufficient to

25 show that the Wells Fargo with whom [Plaintiff] (or his attorney) spoke had the authority to postpone

26 the foreclosure." (*Id.*)  Similarly, Wells Fargo thinks Plaintiff has not pled reliance on or damages

27 caused by   the alleged misrepresentation.  (*Id.* at 12–13.)  Finally, Defendant argues that the

28 allegations of reliance in this case are speculative at best because Plaintiff only states that he would

1   have "'sought other options.'"  (*Id.* at 13 (quoting FAC ¶ 100).)

2        The Court agrees with Defendants that Plaintiff has not sufficiently pled these claims to

3   survive Rule 9(b).  However, some of Wells Fargo's arguments on this point are simply incorrect.  For

4   example, the Court cannot agree that reliance on an oral statement regarding foreclosure postponement

5   was not reasonable as a matter of law.  The cases Defendant cites do not so hold, but some instead deal

6   with the breach of contract issue, *see, e.g.*, *Nguyen v. Calhoun*, 129 Cal. Rptr. 2d 436 (Cal. Ct. App.

7   2003), while others explain that no fraud occurred based on factual and evidentiary determinations

8   by the court.  *See, e.g.*, *Crofoot v. Tarman*, 305 P.2d 56 (Cal. Ct. App. 1957).  This is, of course, not

9   to say that Plaintiff's reliance was reasonable, but rather merely a finding that the issue of

10  reasonableness is for a later date.

11       Similarly, the issue of Wells Fargo's employee's authority to postpone the foreclosure sale is

12  not determinative on this claim.  This is not a question of contract, and Defendant has not shown that

13  an employee without authority cannot defraud a borrower by making representations outside of the

14  scope of his employment.  Instead this issue plays into the considerations required to determine

15  whether Plaintiff reasonably relied on the alleged statement and, as previously noted, today is not the

16  day to resolve that question.

17       Nonetheless, the Court must find that these three claims are inadequate because Plaintiff has

18  not pled sufficient facts to make plausible that he relied on Wells Fargo's misrepresentation or that

19  he was damaged by those misrepresentations.  As stated above, the Court cannot say that the FAC

20  contains factual allegations showing Plaintiff's reliance on Wells Fargo's alleged misrepresentation.

21  Specifically, the documentation submitted was not clearly done in reliance on the alleged promise and

22  Plaintiff has not specifically alleged any realistic option to prevent foreclosure had he known that the

23  foreclosure sale would proceed.

24       As to damages, although Plaintiff states in his brief that he "lost over a million dollars in

25  equity," that is not actually alleged in the FAC.  (Opp. to Wells Fargo's MTD at 14.)  Nor is it clear

26  how, exactly, that equity was "lost."  Further, it is not apparent how that loss was "caused" by the

27  misrepresentation since Plaintiff has not suggested exactly what he could have done to stop the

28  foreclosure sale.

Thus, since Plaintiff has not stated a claim against either Defendant, these causes of action must be **DISMISSED**.  However, the Court will grant Plaintiff **LEAVE TO AMEND** these claims as against Wells Fargo.

F.      "One Action Rule" Claim

Plaintiff's eighth cause of action alleges that both Defendants violated California Code of Civil Procedure § 726, known as the "One Action Rule," by "attempt[ing] to satisfy a debt secured by real property by attaching property other than the secured real property."  (FAC ¶ 106).  Specifically, Wells Fargo applied "Plaintiff's tender of $23,441.39 . . . to the funds demanded in the [Notice of Default]."  (*Id.* ¶ 105.)  Plaintiff paid this amount as part of a forbearance agreement, and effectively is arguing that any such agreement would be barred under section 726.  (*See* Opp. to Wells Fargo's MTD at 19–20.)

Section 726(a) provides "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property . . . , which action shall be in accordance with the provisions of this chapter."  The California Supreme Court has held that the "general operation [of this section] has long been clear," allowing a secured creditor to "bring only one lawsuit to enforce its security interest and collect its debt."  *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal. 3d 991, 997 (1990).  This section also embodies a "security-first" rule, "requir[ing] a secured creditor to proceed against the security before enforcing the underlying debt."  *Id.* at 999.

This statutory provision is clearly inapplicable in this case.  First, the FAC does not plead facts indicating that First American is a secured creditor of Plaintiff.  On the contrary, Plaintiff Pleads that "Defendant FIRST AMERICAN . . . was acting as the agent or trustee for [Wells Fargo] with regard to the Notice of Default . . . and Notice of Trustee Sale."  (FAC ¶ 4.)  As such, this provision does not apply as against First American.

Second, with respect to Defendant Wells Fargo, Plaintiff's allegations indicate that he voluntarily sent Wells Fargo the money at issue to be applied against his debt pursuant to a forbearance agreement.  (FAC ¶¶ 21–22; FAC, Ex. D.)  And despite Plaintiff's arguments, the security-first rule does not prohibit agreements between a lender and borrower that attempt to prevent foreclosure on the security interest.  Instead, this rule requires the sale of the secured property before

- 20 -

the lender pursues the debtor personally for any further deficiency.  *See, e.g.*, *Walker v. Cmty. Bank*, 10 Cal. 3d 729, 736 (1974) ("the clear purpose of section 726 . . . requir[es] a secured creditor to exhaust all security first").      An example of this is *Security Pacific National Bank v. Wozab* where the Plaintiff took a setoff against the subject loans from the Defendants' demand account.  This account apparently was entirely disassociated from the loan other than the fact that the account holders had personally guaranteed the loan.  That court "reaffirm[ed] the long-standing rule that under section 726(a) a bank is not allowed to take a unilateral setoff of funds in a depositor's demand account against a debt secured by the depositor's interest in real property."  *Sec. Pac*, 51 Cal. 3d at 1000.

In this case, no set-off occurred and Wells Fargo did not pursue the Plaintiff's assets prior to foreclosure.  Instead, the parties agreed to a forbearance agreement which required the Plaintiff to make certain payments.  He made those payments but failed to fulfill his obligations regarding another aspect of the agreement.  (FAC ¶ 26.)  This was not a set-off or other attempt to pursue Plaintiff personally prior to foreclosure, but was, as the FAC acknowledges, a joint agreement to stave off foreclosure.  As such, application of the one-action or security-first rules is improper and no amendment can cure the deficiency.  Therefore, the eighth cause of action is **DISMISSED WITH PREJUDICE**.

G.      Intentional and Negligent Infliction of Emotional Distress Claims

The tenth and eleventh causes of action allege that Defendant intentionally and negligently inflicted emotional distress on Plaintiff.  (*See* FAC ¶¶ 117–124.)  Both claims generically allege that unspecified conduct caused Plaintiff severe emotional distress and that Defendants acted either intentionally or negligently in that conduct.  (*Id.*)

A claim for intentional infliction of emotional distress requires that the plaintiff allege: "(i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress."  *Nally v. Grace Cmty. Church*, 763 P.2d 948, 961 (Cal. 1988).  Conduct is outrageous when it is "'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Id.* (quoting *Davidson v. City of Westminster*, 649 P.2d 894, 901 (Cal. 1982)).  "Insults, indignities, annoyances, petty oppressions or

other trivialities will not suffice.  The conduct must be such that it would cause an average member of the community to immediately react in outrage." *Gomon v. TRW, Inc.*, 34 Cal. Rptr. 256, 264 (Cal. Ct. App. 1994).

Negligent infliction of emotional distress, on the other hand, "is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores Cal., Inc.*, 862 P.2d 148, 151 (Cal. 1993).  The relevant "duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 807 (Cal. 1993) (citing *Marlene F. v. Affiliated Psychiatric Med. Clinic*, 770 P.2d 278, 282 (1989)).  "The existence of a duty is a question of law." *Huggins*, 862 P.2d at 151 (citing *Marlene F.*, 770 P.2d at 281).  However, "there is no duty to avoid negligently causing emotional distress to another, and . . . damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." *Potter*, 863 P.2d at 807 (citing *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993)); *see also id.* at 807–08 ("[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty.").  However, even when the defendant breaches some other duty, that "breach of the duty must[, with rare exceptions,] threaten physical injury, not simply damage to property or financial interests." *Id.* at 808.

Wells Fargo argues that "Plaintiff has not alleged any facts against Wells Fargo to support a conclusion that the Bank did anything with any ill will or with the specific intent to cause Plaintiff's emotional distress." (Wells Fargo's MTD at 19.)  Nor does Wells Fargo think that Plaintiff has pled any facts demonstrating outrageous conduct.  (*Id.*)  According to Defendant, it cannot be liable for "pursu[ing] what it believed to be its legal rights (including its right to foreclosure)." (*Id.*)

As to the negligent infliction of emotional distress claim, Wells Fargo argues that Plaintiff cannot state a claim because it, as a financial institution, owes no duty of care to Plaintiff as a borrower. (Wells Fargo's MTD at 19.)  Since Plaintiff has not alleged that Wells Fargo acted beyond its role as a lender he allegedly cannot establish a duty which Wells Fargo breached.  (*Id.* at 20.)

First American simply argues against both claims that Plaintiff has alleged no "outrageous"

conduct on its part, as all allegations relate to Wells Fargo's conduct.  (First Am.'s MTD at 13.)

The Court finds that both of these claims are insufficiently pled.  First, there is no suggestion that either Wells Fargo or First American owed Plaintiff a duty sufficient to support his negligent infliction of emotional distress claim.  Certainly the parties had no special relationship where Plaintiff's emotional condition was an object.  *Potter* 863 P.2d at 807–08.  Further, there is no suggestion that Plaintiff was threatened with physical injury or that this case falls within one of the exceptions.  Finally, Plaintiff does not specifically argue in opposition to the dismissal of his negligent infliction claim.  As such, the Court finds that the eleventh cause of action must be **DISMISSED WITHOUT LEAVE TO AMEND**.

Next, Plaintiff's intentional infliction of emotional distress claim lacks sufficient allegations to satisfy the elements of this tort.  First, it is not clear that either Wells Fargo's behavior or First American's was outrageous in the sense that it was "'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Nally*, 763 P.2d at 961 (quoting *Davidson*, 649 P.2d at 901).  Plaintiff was in default on his loan, Wells Fargo had the legal right to foreclose, and First American had the right to complete the foreclosure sale.  The fact that one of Defendant Wells Fargo's employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context.  *Id.*  Second, Plaintiff has not alleged facts that would indicate that Wells Fargo intended to cause, or disregarded the possibility of causing, emotional distress.  Third, the connection between Defendant's action and the emotional distress is inadequately stated.  To the extent that the connection is Plaintiff's loss of property, "[n]o California case has allowed recovery for emotional distress arising solely out of property damage." *Erlich*, 981 P.2d at 985.  Further, although Plaintiff suggests that "pulling his bags off the airplane for his scheduled flight" is a further basis, it is not clear how Defendants' conduct caused Plaintiff to take this action, how Defendants' would have any idea that Plaintiff was getting on a plane that day, or why getting off a flight was an actual cause of Plaintiff's emotional distress.  Absent these essential elements, Plaintiff's intentional infliction of emotional distress claim cannot stand.

As to Plaintiff's arguments, the claim that the Defendants were "in a position of power over plaintiff," it is not particularly relevant.  (Opp. to Wells Fargo's MTD at 21; Opp. to First Am.'s MTD

at 14.)  Plaintiff offers no indication that the mortgage itself was unfair or placed Defendants in a position of power.  At the time of the foreclosure, the Defendants' supposed "position of power" arose solely from Plaintiff's failure to make the required loan payments.  (FAC ¶ 12.)  Without that failure to pay and the subsequent default, no foreclosure could have occurred.  This is not the type of abuse of a position of power sufficient to support an emotional distress claim.

Similarly, Plaintiff's citation to *Crisci v. Sec. Ins. Co. of New Haven*, 66 Cal. 2d 425 (1967), is not helpful.  Although the California Supreme Court allowed emotional distress damages in that case, it noted that "[r]ecovery of damages for mental suffering in the instant case does not mean that in every case of breach of contract the injured party may recover such damages."  *Id.* at 434.  It also noted the importance of the insurance context and the desire to protect against the mental distress which could accompany the loses insured against.  *Id.*  Such factors are not present here.

Thus, since Plaintiff has not stated a claim for intentional infliction of emotional distress, the tenth cause of action is **DISMISSED WITHOUT PREJUDICE** and with **LEAVE TO AMEND**.

H.      Injunctive Relief and Declaratory Relief Claims

In Plaintiff's thirteenth cause of action he seeks injunctive relief.  (FAC ¶¶ 127–29.)  In the fourteenth cause of action he requests declaratory relief.  (*Id.* ¶¶ 130–33.)

"Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action."  *Cox Commc'n PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002).  Thus injunctive relief must be tethered to some independent legal duty owed by the defendant to the plaintiff.  *Martone v. Burgess*, 2008 WL 3916022, at *4 (N.D. Cal. 2008).

Plaintiff asks this Court to "construe the thirteenth cause of action as a request [for an injunction] and not as a separate cause of action."  (Opp. to Wells Fargo's MTD at 23.)  The Court will do so.  However, since no claims remain which could serve as the basis for an injunction, this cause of action is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

Under federal law, a litigant may bring an action pursuant to the Declaratory Judgment Act.  28 U.S.C. § 2201.[7]  However, this Act "is an enabling Act, which confers discretion on the courts

---

[7] Although the FAC does not specifically state whether Plaintiff seeks declaratory relief under federal or state law, the Court presumes that he intends to invoke federal law because that is the sole subject of his opposition briefing on this issue.  (*See* Opp. to Wells Fargo's MTD at 22–23.)

rather than an absolute right upon the litigant." *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952); *see also Zemel v. Rusk*, 381 U.S. 1, 19 (1965); *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961). The Court can exercise this discretion and decline to consider a declaratory judgment claim even where that claim contains a justiciable controversy. *United States v. Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985) (citing, *inter alia*, *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir. 1980)). Even "after a full consideration of the merits, [the court may] exercise its discretion to refuse to grant declaratory relief because the state of the record is inadequate to support the extent of relief sought." *Id.* (citing *Nat'l Automatic Laundry & Cleaning Council v. Schultz*, 443 F.2d 689, 703 (D.C. Cir. 1971)).

Plaintiff suggests that his "request for declaratory relief is not redundant in the face of the other causes of action, and it may be useful in clarifying the legal relations between the parties." (Opp. to Wells Fargo's MTD at 23.) The specific items which Plaintiff believes would be clarified are "the actual status and validity of the loan, Deed of Trust, and Notice of Default, Trustee's Sale Deed and ownership in Plaintiff's Residence." *Id.*

The Court, however, declines to consider Plaintiff's request at this time. All of the other causes of action are being dismissed and there is no basis for the declaratory judgment action to remain alone. Thus, it is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

I.     Quiet Title Claim

The fifth cause of action seeks to quiet title on the subject property. (FAC ¶¶ 92–94.) It states that the Defendants are asserting an adverse interest and that Plaintiff seeks to quiet title as of February 16, 2007. (*Id.*)

Quiet title claims may establish title against adverse claims to real property or any interest therein. Cal. Civ. Proc. Code § 760.020. A complaint alleging such a claim must be verified and include (1) a description of the property; (2) the basis for plaintiff's title; (3) the adverse claim or claims to title; (4) the date as of which the determination is sought; and (5) a prayer for determination of plaintiff's title against the adverse claims. *Id.* § 761.020.

The Court finds that this claim must be **DISMISSED** because Plaintiff has not alleged that he

is able to tender the amount of his indebtedness.  California law holds that a plaintiff cannot quiet title in his property against his mortgage lender "without discharging his mortgage debt.  The cloud upon his title persists until the debt is paid." *Aguilar v. Bocci*, 114 Cal. Rptr. 91, 92 (Cal. Ct. App. 1974) (citing *Burns v. Hiatt*, 87 P. 196, 197 (Cal. 1906)); *see also Distor v. US Bank NA*, 2009 WL 3429700, at *6 (N.D. Cal. 2009) ("[P]laintifff has no basis to quiet title without first discharging her debt."). In this case, Plaintiff has not alleged either that he has tendered his indebtedness or that he is able to do so.  Absent this key offer, the Court must **DISMISS** this claim **WITHOUT PREJUDICE**.

Plaintiff's arguments do not change this conclusion.  First, the Court has already addressed and rejected Plaintiff's claims regarding the consequences of Wells Fargo's alleged non-compliance with section 2923.5.  Even if Defendant failed to comply with that section, Plaintiff's only remedy was a postponement of the foreclosure sale and that only prior to the sale.   *Mabry*, 2010 WL 2180530 at *7 & *14.  Since the sale has already occurred, there was no defect in the chain of title.

Second, Plaintiff's argument that he should not be required to allege an ability to tender is unconvincing.  At the end of the day, if Plaintiff wishes to avoid his loan he is going to have to pay it off in its entirety.[8]  Requiring at least an allegation of tender at the outset is reasonable since it would waste both the parties' time and the Court's time should he be unable to pay at the case's conclusion.

I.     California Business and Professions Section 17200 Claim

Finally, Plaintiff's ninth cause of action is for violations of California Business and Professions Code section 17200.  As both parties agree, this claim stands and falls with the viability of Plaintiff's other claims.  (*See* Wells Fargo's MTD at 17–18; Opp. to Wells Fargo's MTD at 20.)  Since all of Plaintiff's other claims have been dismissed, this claim is also **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

//

//

---

[8]  Further, although Plaintiff repeated refers to this as an "ambush foreclosure," there are no which indicate that is the case.  Plaintiff was long on notice of the date of the foreclosure sale on the property.  Moreover it is unclear how Plaintiff was deprived of his ability to tender prior to the sale since there is no allegation that Defendant would not have simply allowed him to immediately pay off his entire debt at any time between the filing of the Notice of Default and the foreclosure sale.

10cv944

1

**CONCLUSION**

2    For the reasons stated, Defendant First American's motion to dismiss is **GRANTED** and

3 Defendant Wells Fargo's motion to dismiss is also **GRANTED**.  Plaintiff's first, second, fourth,

4 seventh and eleventh causes of action are **DISMISSED WITH PREJUDICE** as to all Defendants.

5 Plaintiff's third, sixth, eighth, and twelfth causes of action are **DISMISSED WITH PREJUDICE**

6 as to Defendant First American.  All remaining claims are **DISMISSED WITHOUT PREJUDICE**

7 and **WITH LEAVE TO AMEND** as discussed above.

8    IT IS SO ORDERED.

9

10 DATED:  August 26, 2010

11                                                      _____
                                                          Honorable Janis L. Sammartino
12                                                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10cv944